UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CATERPILLAR FINANCIAL SERVICES
CORPORATION,

      Plaintiff,

v.

CASE NO.:

VENEQUIP MACHINERY SALES
CORPORATION,

      Defendant.
_____/

**COMPLAINT FOR BREACH OF CONTRACT**

Plaintiff, Caterpillar Financial Services Corporation ("CFSC" or the "Plaintiff") hereby files this Complaint against Defendant, Venequip Machinery Sales Corporation, ("VMSC Miami" or the "Defendant", and together with the Plaintiff, the "Parties") and states the following in support:

**INTRODUCTION**

1. This lawsuit is brought pursuant to a straight-forward inventory loan agreement dated June 16, 2016 between the Plaintiff, CFSC, as lender, and the Defendant, VMSC Miami, as borrower, (the "Inventory Loan Agreement").

2. The Inventory Loan Agreement established the framework by which VMSC Miami was entitled to periodically request monies from CFSC, up to a maximum credit limit of $5 million.

3. Each transaction for an advance of funds under the Inventory Loan Agreement was evidenced by a separately executed promissory note.

4. This lender-borrower framework was mutually created by the Parties so as to allow VMSC Miami access to funds to permit it to purchase inventory (construction and related equipment) from Caterpillar, Inc. ("Caterpillar") or other affiliates of CFSC.

5. As of December 2017, VMSC Miami is, and remains, in default of its obligations under the express terms of the Inventory Loan Agreement by virtue of its failure to repay amounts as they become due.

## OTHER LITIGATION

6. There is substantial, ongoing litigation and arbitration proceedings by and between entities related to the Plaintiff and Defendant in jurisdictions around the globe. Certain of these various actions are, for clarity, described below.

## THE CURACAO ACTION

7. Caterpillar is the world's leading manufacturer of industrial equipment and engines.

8. Caterpillar Crédito, SA de CV Sociedad Financiera De Objeto Múltiple ENR ("Cat Crédito") is a subsidiary of CFSC, which in turn, is a subsidiary of Caterpillar.

9. Caterpillar, through CSFC and Cat Crédito, routinely provides financing to its various dealers and select customers.

10. Mr. Carlos Bellosta Pallures ("Bellosta") is the principal of a group of companies known as the Venequip Group. Bellosta exercises ultimate control and domination over Venequip.

11. Venequip S.A., an affiliate of the Venequip Group, was, at all relevant times, an authorized dealer of Caterpillar machinery and parts.

12. Caterpillar, through both CFSC and then Cat Crédito, provided substantial financing to various companies within the Venequip Group, to among other things, purchase inventory, upgrade its facilities, and expand its commercial ability to serve owners and purchasers of Caterpillar equipment.

2

13. In 2007 Cat Crédito entered into a loan agreement with a member of the Venequip Group known as VMSC Curacao, N.A. ("VMSC Curacao") in an amount approximating $4.9 million (the "Original Loan Agreement").

14. VMSC Curacao's obligations under this Original Loan Agreement were secured by a corporate guarantee ("the Corporate Guarantee") entered into between Cat Crédito (as beneficiary of the guarantee), and (i) Venequip S.A. (a Venezuelan company), (ii) Solidus Investments Corporation (a Barbados company) and (iii) VMSC Miami (the Plaintiff hereto) (hereinafter collectively the "Corporate Guarantors").

15. Between 2007 and 2015 the Original Loan Agreement was extended and amended multiple times, including for the purpose of increasing the principal amount of available credit. The Corporate Guarantee applied to VMSC Curacao's obligations under these extensions/amendments.

16. In 2015 Cat Crédito entered into a further extension of the loan agreement ("the 2015 Loan Agreement") with VMSC Curacao pursuant to which Cat Crédito increased the VMSC Curacao existing line of credit to up to $110 million.

17. As of December 2017, VMSC Curacao had defaulted on its principal and interest payment obligations under the terms of the 2015 Loan Agreement by virtue of its failure to make all required payments when due.

18. The Corporate Guarantors have failed to fulfill or meet their contractual obligation under the Corporate Guarantee as they relate to the 2015 Loan Agreement.

19. Pursuant to the terms of the 2015 Loan Agreement and the Corporate Guarantee, Cat Crédito has initiated a petition to the court of First Instance of Curacao against (i) VMSC Curacao (the borrower) and, (ii) two of the Corporate Guarantors – Venequip S.A. and Solidus

Investment Corporation (formerly known as Venequip S.A. Limited), seeking to recover over $120 million in principal, interest, default interest, and other damages.[1]

## PARTIES

20. Plaintiff CFSC is a Delaware Corporation with offices located at 2120 West End Avenue, P.O. Box 390001, Nashville Tennessee 37203-0001, and is a subsidiary of Caterpillar Inc.

21. Defendant VMSC Miami is one of the Venequip Group's trading entities which, during the relevant time period, was responsible for Venequip sales in the U.S. The Defendant is a company operated and existing under the laws of the State of Florida with its principal office located at 790 NW 107th Ave, Suite 105, Miami, Florida, 33172-3100.

22. Upon information and belief, Bellosta is the controlling shareholder of VMSC Miami by virtue of his interest in certain related entities and/or trusts of which he is the settlor and a beneficiary.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to 28 USC §§1332.

24. The amount in controversy exclusive of interest and costs exceeds the sum of $75,000.00.

25. The Parties are citizens of different states.

26. Venue is confirmed by the terms of the Inventory Loan Agreement. Specifically the Inventory Loan Agreement provides that any judicial proceedings brought against the Defendant may be brought at the election of Plaintiff in any state or federal court of competent jurisdiction in the State of Florida (Clause 8.09).

---

[1] The Defendant here is not a party to the Curacao proceedings. Cat Crédito has filed a separate suit against VMSC Miami, in this Court for its breach of the Corporate Guarantee.

4

27. The Inventory Loan Agreement is governed by the laws of Tennessee (Clause 8.08).

## ADDITIONAL FACTUAL BACKGROUND

28. On or around June 30, 2016, CFSC as lender and VMSC Miami as borrower entered into a Master Loan Agreement—the Inventory Loan Agreement—pursuant to which the Plaintiff would make certain funds available to Defendant in order to allow it to finance products manufactured by Caterpillar, up to a maximum aggregate total amount of $5 million. A copy of the Inventory Loan Agreement is attached hereto as **Exhibit A**.

29. The Inventory Loan Agreement was designed as a framework agreement pursuant to which the Defendant could request funds from time to time, with each loan or draw on its credit limit documented by a separate promissory note (each a "Note").

30. The Inventory Loan Agreement provides (among other things) that:

   a. Whenever Defendant wished to borrow money it would deliver an executed Note to Plaintiff. The Plaintiff had the right, but not any obligation, to grant said loan request (subject to the loan ceiling of $5 million) (Clause 2.14). Each and every Note evidenced a Loan (Clause 2.02) by the Plaintiff, payable to the order of the Plaintiff with a 12-month (360 days) maturity, with all accrued interest and principal outstanding due at maturity, and each Note otherwise governed by the Inventory Loan Agreement (Clause 2.03);

   b. The Inventory Loan Agreement provided for a specified interest rate and a "default rate of interest" of twenty-nine percent (29%) per annum (Clause 2.05);

   c. The default rate applied following (i) … (ii) a failure to repay the amount of principal or interest as they came due, any other failure to perform obligations under the terms of the agreement, and (iii) if there was any adverse change with respect to the

Defendant's financial condition which resulted in the Plaintiff's opinion in a material impairment of the prospect of repayment (Clause 7.05);

 d. It was further agreed by the Parties that under any circumstances of default, a default charge of U.S. $50 per day would be payable, in addition to the default rate of interest;

 e. In the event that the loan was "accelerated" following an event of default, Defendant would be liable to pay an "acceleration premium" of one percent (1%) of the total unpaid balance at the time of acceleration (Clause 2.10);

 f. Upon the occurrence of an event of default, the Plaintiff is entitled to declare the entire unpaid principal and interest due, and proceed to take enforcement action and pursue all other rights and any remedies available to it (Clause 7.02), with any failure or delay by the Plaintiff in doing so not resulting in any waiver of those rights (Clause 8.01); and

 g. The Defendant shall also pay on demand all losses, cost, and expenses sustained by the Plaintiff (including internal and external case fees and expenses incurred by Plaintiff) as a result of any failure by the Defendant to perform or honor its obligations under the Inventory Loan Agreement or other loan documents (Clause 8.05).

31. The Parties entered into a number of Notes throughout 2017 pursuant to the Inventory Loan Agreement, all on identical terms and conditions but-for the amount borrowed.

32. Specifically, the Parties entered into a Note dated January 25, 2017 in the amount of $1,986,055.23. The Note was due to be repaid in full twelve months following the date on which funds were advanced ("January 2017 Note," attached hereto as **Exhibit B**). This Note

contains the 1% accelerated premium and $50 daily U.S. late payment charge described in the Inventory Loan Agreement.

33. The Parties entered into a Note dated February 24, 2017 in the amount of $1,256,149.29 and, but-for the loan amount, was borrowed on the identical terms and conditions as the January 2017 Note (attached hereto as **Exhibit C**).

34. The Parties entered into a further Note dated April 25, 2017 in the amount of $1,105,656.00 and, but-for the loan amount, was borrowed on the same terms and conditions as the January 2017 Note (attached hereto as **Exhibit D**).

35. The Parties entered into a further Note dated May 25, 2017 in the amount of $34,769.11 and, but-for the loan amount, was borrowed on the same terms and conditions of the January 2017 Note (attached hereto as **Exhibit E**).

36. The Parties entered into a further Note on August 25, 2017 in the amount of $205,928.50 and, but-for the loan amount, was borrowed on the same terms and conditions as the January 2017 Note (attached hereto as **Exhibit F**).

37. Finally, the Parties entered into a further Note on October 25, 2017 in the amount of $183,830.03 and, but for the loan amount, was borrowed on the same terms and conditions of the January 2017 Note (attached hereto as **Exhibit G**).

38. In total, the Parties entered into six Promissory Notes between January and October 2017, in principal amounts which totaled $4,772,386.16.

39. On or around December 16, 2017 VMSC Curacao defaulted on its 2015 Loan Agreement with Cat Crédito by virtue of its failure to make all required payments when due. As a result, the Plaintiff or affiliates formally declared an event of default not only as to the 2015 Loan Agreement, but also as to the Inventory Loan Agreement, on the basis that the VMSC Curacao

default constituted material impairment of the prospect that VMSC Miami could or would, be financially capable to repay the Inventory Loan Agreement. A copy of the December 15, 2017, default letter is attached hereto as **Exhibit H**.

40. On or around December 28, 2017 – the day after the 10-day "cure" period provided to VMSC Curacao to make payment of the outstanding installments under the 2015 Loan Agreement–the Plaintiff exercised its right to accelerate repayment of outstanding amounts due and owing under the Inventory Loan Agreement and related Notes. CFSC notified the Defendant of the "event of default" under the Inventory Loan Agreement, and demanded repayment of all outstanding principal, interest and other amounts then due under the Inventory Loan Agreement. A copy of the December 28, 2017, default letter is attached hereto as **Exhibit I**.

41. At present, the outstanding amount of principal, interest and other contractually agreed upon amounts, including default interest, late payment charges and the acceleration premium, is in excess of $10 million.

42. Despite written notice as to an event of default and the Plaintiff's demand for repayment, CFSC has received no repayment of any kind under the terms of the Inventory Loan Agreement and related Notes.

## CLAIMS

### COUNT 1 (BREACH OF CONTRACT)

43. The Plaintiff, CFSC, repeats and re-alleges each and every allegation contained in paragraphs 1 through 42 above as if fully set forth herein.

44. The Parties entered into a written contract – the Inventory Loan Agreement.

45. The Parties executed six (6) separate written Notes pursuant to the terms and conditions of the Inventory Loan Agreement.

46. These written agreements constitute enforceable contracts under applicable law.

47.     The Defendant, VMSC Miami, has materially breached its contractual obligations by, among other things, failing to make the required repayments of principal and interest due and owing under the aforementioned Inventory Loan Agreement and Notes.

48.     There is no legal excuse or justification for the Defendant's non-performance.

49.     As a direct result of the Defendant's breaches, CFSC has suffered and will continue to suffer significant monetary damages, including (without limitation), the failure to recover contractually agreed upon principal, interest, default interest, late charges, acceleration premiums, attorneys' fees, costs and other expenses in excess of $10 million.

**WHEREFORE** Plaintiff, Caterpillar Financial Services Corporation, respectfully demands judgment against the Defendant, Venequip Machinery Sales Corporation, for damages in an amount to be proven at trial as well as attorney's fees, costs, and expenses in enforcing its rights under the Inventory Loan Agreement and Notes, and for such further relief deemed just and proper.

Respectfully submitted

Buchanan Ingersoll & Rooney PC
Counsel for Plaintiff
One Biscayne Tower
Two South Biscayne Blvd, Suite 1500
Miami, FL 33131-1822
Peter Russ (peter.russ@bipc.com)
Florida Bar No. 486329
Mark Kornfeld (mark.kornfeld@bipc.com)
Florida Bar No. 1019233
Lauren Humphries (lauren.humphries@bipc.com)
Florida Bar No. 117517
Kyle Roberts (kyle.roberts@bipc.com)
Florida Bar No. 118401


By      /s/ *Kyle S. Roberts*
            Kyle Roberts, Esq.
            Florida Bar No. 118401