UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-23002-CIV-SCOLA/GOODMAN

CATERPILLAR FINANCIAL SERVICES
CORPORATION

      Plaintiff,

v.

VENEQUIP MACHINERY SALES
CORPORATION

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON DEFENDANT'S
MOTION FOR INTERNATIONAL ABSTENTION STAY
<u>AND/OR MOTION TO DISMISS</u>**

In this breach of contract action [ECF No. 1] filed by Plaintiff Caterpillar Financial

Services Corporation ("CFSC" or "Plaintiff"), Defendant Venequip Machinery Sales

Corporation ("Venequip" or "Defendant") filed a motion to stay the entire case under the

international abstention doctrine (and other grounds) pending adjudication of related

litigation in Curaçao. [ECF No. 22]. As alternative relief, Defendant also seeks dismissal

of the Complaint under myriad theories. *Id.* Caterpillar filed a response [ECF No. 40] and

Venequip filed a reply [ECF No. 43]. United States District Court Judge Robert N. Scola,

Jr. referred the motion to the Undersigned for a Report and Recommendations. [ECF No.

28].

In the Undersigned's Order denying Defendant's motion to stay discovery, I summarized the background surrounding the instant motion as follows:

> The parties disagree about the fundamental nature of the lawsuit pending here. Venequip contends that resolution of the Curaçao Proceeding (filed in Curaçao by a different, but related entity, Caterpillar Crédito, SA de CV Sociedad Financiera De Objeto Múltiple ENR, against a different, but related Defendant, VMSC Curaçao, N.A.) is dispositive of this case. At bottom, Venequip argues that the primary breach at issue here is the default at issue in the Curaçao Proceeding, not the breach of the Inventory Loan Agreement.
>
> But Caterpillar emphasizes that the alleged Inventory Loan Agreement breach is in fact alleged here and is very much at issue. It says that the Curaçao Proceeding will not determine the outcome of the case pending here.
>
> On the other hand, Venequip says that the Complaint filed here: (i) devotes nearly a third of its paragraphs to the Curaçao Proceeding and the breach alleged there; (ii) specifically alleges that the breach at issue here is premised upon the Curaçao-based breach; (iii) the only notices of default Caterpillar attaches to its Complaint as exhibits are the Curaçao-related default notices sent to the separate entity in Curaçao; and (iv) contains just one sentence alleging a nonpayment breach – with no supporting factual allegations or exhibits.
>
> In response, Caterpillar says that default notices are not required under the Loan Agreement and that a default and acceleration letter *was* sent to Miami. Although Caterpillar did not attach the default letter sent to Venequip in Miami to its Complaint, it has now [ECF No. 40-2] filed that default letter as an exhibit to its opposition response to the abstention/stay motion. Moreover, Caterpillar notes that its lawsuit here is based on a payment default, and it argues that Venequip is trying to read out the non-payment allegation from the Complaint.

[ECF No. 41].

Although the Order denying Defendant's motion to stay discovery was issued

before Defendant filed its reply in support of the instant motion, the above summary

remains an accurate representation of the parties' positions.

## I.   Legal Standards

### a.   Abstention

Federal courts have a "virtually unflagging obligation . . . to exercise the

jurisdiction given them," and abstention from the exercise of that jurisdiction "is the

exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S.

800, 813, 817 (1976) (abstention is "an extraordinary and narrow exception" to a court's

"duty" to "adjudicate a controversy properly before it"); *see also Turner Ent. Co. v. Degeto*

*Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994) (reviewing principles guiding approaches

to international abstention).

In such exceptional circumstances, however, "a federal court should stay a suit

and await the outcome of parallel proceedings as a matter of 'wise judicial administration,

giving regard to the conservation of judicial resources and comprehensive disposition of

litigation.'" *Finova Cap. Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir.

1999) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 817).

In *Turner Ent. Co.*, 25 F.3d at 1518, the Eleventh Circuit identified three "**goals** in

the area of concurrent international jurisdiction: (1) a proper level of respect for the acts

of our fellow sovereign nations — a rather vague concept referred to in American

jurisprudence as international comity; (2) fairness to litigants; and (3) efficient use of

scarce judicial resources." (footnote omitted) (emphasis added).

As summarized by Chief United States District Court Judge Cecilia M. Altonaga:

Each "goal" encompasses three to four **factors.** Analysis of the first goal — promotion of comity — considers "[a] whether the judgment was rendered via fraud, ... [b] whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence, ... and [c] whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just." *Turner* [*Ent.*] *Co.*, 25 F.3d at 1519 (alterations added; citations omitted). The second goal — fairness — considers "[a] the order in which the suits were filed, ... [b] the more convenient forum, ... and [c] the possibility of prejudice to parties resulting from abstention." *Id.* at 1521–22 (alterations added; citations omitted). And the third goal — efficiency — considers "[a] the inconvenience of the federal forum, ... [b] the desirability of avoiding piecemeal litigation, ... [c] whether the actions have parties and issues in common, ... and [d] whether the alternative forum is likely to render a prompt disposition[.]" *Id.* at 1522 (alterations added; citations omitted). If application of the foregoing factors favors deference to a foreign judgment or foreign legal proceedings, the court must then consider whether to stay or dismiss the action before it. *See id.* at 1523.

*St. Martinus Univ., NV v. Caribbean Health Holding, LLC*, No. 19-22278-CIV, 2020 WL 956301, at *7 (S.D. Fla. Feb. 27, 2020) (footnote omitted) (emphasis added).

Abstention can be applied either retrospectively, where the United States court defers to "the judgment of a foreign tribunal or . . . parallel foreign proceedings," or prospectively, where the United States court stays or dismisses an action "based on the interests of our government, the foreign government and the international community in resolving the dispute in a foreign forum." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004). Far from being mandatory, the "decision to invoke the international abstention doctrine falls within the *sound discretion* of the district court."

*Hale v. Fr. LURSSEN WERFT GmbH & Co. KG*, No. 09-23787, 2010 WL 11601558, at *2 (S.D. Fla. Apr. 26, 2010) (citing *Seguros del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164, 1169 (11th Cir. 2001)) (emphasis supplied).

When a foreign tribunal has not yet issued a judgment in the parallel proceedings, "the appropriate resolution is a stay rather than a dismissal of the American action." *Turner Ent. Co.*, 25 F.3d at 1523.

### b. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to state a cause of action for which relief may be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, the Court must accept the factual allegations as true and construe them broadly in the light most favorable to the plaintiff. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). When conducting this analysis, the Court may typically examine only the four corners of the complaint. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff must do more than merely label his or her claims." *Afkhami v. Carnival Corp.*, 305 F. Supp. 2d 1308, 1325 (S.D. Fla. 2004) (citing *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996)). Instead, "[a] pleading that states a claim for relief must contain . . . a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R. Civ. P. 8(a)(2).

The ultimate inquiry is not whether the plaintiff will actually prevail on her theory;

rather, it is whether the allegations are sufficient to sustain the claims at trial. *See Jackam*

*v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.   Analysis

### a.   Abstention

As a threshold consideration, the Undersigned must determine if the Curaçao

matter and this case qualify as parallel proceedings. *Marti v. Iberostar Hoteles y*

*Apartamentos S.L.*, 54 F.4th 641, 650 (11th Cir. 2022).

"Suits are parallel if substantially the same parties are litigating substantially the

same issues simultaneously in two fora." *Finova Cap. Corp.*, 180 F.3d at 898. "[T]he

'parallel proceedings' requirement does not require that the concurrent proceedings be

identical as to parties and claims; rather, the cases must only be substantially similar."

*Risk Ins. & Reinsurance Sols. v. R + V Versicheru*ng, No. 04-61119-CIV, 2005 WL 8155478, at

*3 (S.D. Fla. Sept. 22, 2005) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1224 (11th Cir.

1999) (per curiam) (stating, "although this case and the Bermuda action are not identical,

they involve significantly common issues and parties").

Defendant says that the parties are substantially similar because "[t]he parties in

the two related cases before this Court and in the Curaçao [p]roceeding all have

Caterpillar related entities as plaintiffs and Venequip Group entities as defendants." [ECF No. 22]. Defendant bolsters its similarity argument by noting that "Cat Crédito is a subsidiary of CFSC, and VMSC Miami and VMSC Curaçao are related entities that are both part of the Venequip Group." According to Defendant, the similarity of the parties is readily apparent based on the fact that "CFSC and Cat Crédito are both lenders of VMSC Miami and VMSC Curaçao, respectively, [and] CFSC has linked the terms of CFSC's loan to VMSC Miami to the terms of Cat Crédito's loan to VMSC Curaçao."

Plaintiff's response is straightforward and brief: "[t]he [p]laintiffs are different [and] [t]he [d]efendants are different." [ECF No. 40].

As explained below, the Undersigned finds that the parties are substantially similar:

As recently stated by the Eleventh Circuit, "[t]he proceedings need not be exactly parallel as long as they are substantially similar." *Gold-Fogel v. Fogel*, 16 F.4th 790, 801 (11th Cir. 2021) (internal quotations omitted and alteration removed). The Eleventh Circuit has acknowledged that this is the prevailing viewpoint throughout the country. *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330, n.21 (11th Cir. 2004) (citing *United States v. City of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) ("[S]tate and federal proceedings are sufficiently parallel if substantially the same parties litigate substantially the same issues." (marks and citation omitted)); *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) ("Suits are parallel if substantially the same parties are

litigating substantially the same issues simultaneously in two fora." (marks and citation omitted)); *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) ("Exact parallelism is not required: it is enough if the two proceedings are substantially similar."); *Marcus v. Twp. of Abington*, 38 F.3d 1367, 1378 (3d Cir. 1994) ("Although federal and state actions need not be wholly identical in order for a district court to deem them 'parallel,' the two actions will not be deemed parallel unless they are substantially similar."); *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums.")).

There is "no clear test for deciding whether two cases contain substantially similar parties and issues." *Acosta v. James A. Gustino, P.A.*, 478 F. App'x 620, 622 (11th Cir. 2012). Here, although the litigants are not identical, the parties in the Curaçao proceeding and the parties in the instant proceeding share very close connections. Not only is Plaintiff a subsidiary of the Curaçao plaintiff, but the defendants in both actions are also each merely localized entities which fall under the larger Venequip Group umbrella. The connection between the four entities is reinforced by the fact that Plaintiff and Defendant included in their contract a clause which permitted Plaintiff to consider the contract performance of the Curaçao parties -- who Plaintiff now claims bear no relation to the instant lawsuit -- in determining whether a breach has occurred.

Further, contrary to the summary argument in Plaintiff's response, the Complaint

acknowledges this connection, stating that there "is substantial, ongoing litigation and arbitration proceedings by and between entities *related to* the Plaintiff and Defendant in jurisdictions around the globe." [ECF No. 1 (emphasis added)].

Multiple courts in this district and throughout the country have found that parties are substantially similar based on relationships comparable to those connecting the Curaçao and Miami litigants. *See, e.g., Corestates, Inc. v. Phillips*, No. 1:16-CV-1170-ODE, 2016 WL 9454438, at *3 (N.D. Ga. Aug. 5, 2016) (finding that the actions were parallel because "[t]he remaining defendant in the New Jersey action, John Scheffey, is the CEO and majority shareholder of the plaintiffs in the Georgia action[.]"); *Urvan v. TVP Ventures, LLC*, No. 1:20-CV-153-TCB, 2021 WL 8648896, at *23 (N.D. Ga. Mar. 25, 2021), on reconsideration in part, No. 1:20-CV-153-TCB, 2021 WL 8572796 (N.D. Ga. June 29, 2021) (the defendants were substantially similar despite not being identical because the defendants in the state court action were either "affiliated with" or "share[d] common principals" with the defendants in the federal action); *Am. Guarantee & Liab. Ins. Co. v. CTA Acoustics, Inc.*, No. CV 05-80-KKC, 2006 WL 8443548, at *5 (E.D. Ky. Sept. 15, 2006) (parties were sufficiently similar despite the fact that one case involved a company and the other involved insurers suing as subrogee of the company's parent corporation); *Lumen Const., Inc. v. Brant Const., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985) (upholding the district court's determination that the parties were substantially similar when one case involved the company as a plaintiff and the other case involved the sole shareholders of

that same company); *see Canady v. Koch*, 608 F. Supp. 1460, 1475 (S.D.N.Y.) aff'd sub nom. *Canady v. Valentin*, 768 F.2d 501 (2d Cir. 1985) ("Where the interests of the plaintiffs in each of the suits are congruent, *Colorado River* abstention may be appropriate notwithstanding the nonidentity of the parties.").

Next, the Undersigned must examine whether the issues in the cases are substantially similar. The Complaint details at length the facts and circumstances at issue in the Curaçao action. Indeed, Plaintiff's lawsuit here accuses Defendant of defaulting on the Inventory Loan Agreement in December 2017 based on events which are at issue in the Curaçao action. In fact, the facts section devotes fifteen paragraphs to the events in Curaçao which were the catalyst for Defendant's purported default and only eight paragraphs to the specific notes which Plaintiff now claims are the crux and the main focus of its case here.

In Defendant's view, the Complaint makes it clear that "all roads in this case lead to Curaçao." [ECF No. 42]. Plaintiff accuses Defendant of "reading out [the] payment breach from the Complaint." For this point, Plaintiff relies on the following paragraph:

> The Defendant, VMSC Miami, has materially breached its contractual obligations by, among other things, failing to make the required repayments of principal and interest due and owing under the aforementioned Inventory Loan Agreement and Notes.

[ECF No. 1].

This paragraph hardly makes clear that the focus of this lawsuit is based on the non-payment of notes as payment became due. Rather, it operates as an amorphous

allegation that Defendant failed to timely repay money. The failure to pay could concern the payments due 360 days after the issuance of a note or it could concern the payments due after Plaintiff claims Defendant first defaulted.

Moreover, the mere fact that additional claims might exist in one action does not mean the issues are not similar. *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1377 (S.D. Fla. 2014) (actions were parallel even though "[Sini's] federal action is primarily concerned with her rights as a Citibank account holder, an issue not before the state court, Citibank's claim for interpleader relief in the state action would no doubt dovetail with its defense to Sini's claims in this action. Moreover, Sini's entitlement to the funds in the account is the central issue in Blu One Estate's state court complaint, and a ruling on Blu One Estate's claims could affect Citibank's potential liability to Sini in the federal action." (internal citations to the docket omitted)).

In fact, the claims themselves do not even need to be identical. *Baker v. Warner/Chappell Music, Inc.*, 2018 WL 1570360 at *4 (S.D. Fla. Mar. 29, 2018) (holding lawsuits were substantially similar under *Colorado River* even though one concerned copyright claims and one concerned contract claims where the core issue in each was ownership of musical works).

Any fair reading of Plaintiff's Complaint requires one to thoroughly consider the Curaçao events. The Curaçao events underpin the initial breach. The Curaçao events were the sole subject of the only default notice (which will be discussed more thoroughly

below) which was sent. The Curaçao events intertwine with nearly every substantive allegation in Plaintiff's Complaint. Thus, although this case may have additional claims which do not exist in the Curaçao action, the issues are substantially similar.

Because the parties and the issues are substantially similar (i.e., the proceedings are parallel), the Undersigned must now assess whether a stay is appropriate.

As stated previously, if parallelism exists, then the Court must next determine whether abstention is appropriate using a three-factor analysis: (1) international comity; (2) fairness to the litigants; and (3) efficient use of scarce resources. *Turner Ent. Co.*, 25 F.3d at 1518.

Examining whether international comity exists requires the court to consider "whether the foreign court is 'competent to hear the claims or would . . . use fair and just proceedings in deciding the case[,]'" *Velarde v. HSBC Priv. Bank Int'l*, No. 13-22031-CIV, 2013 WL 5534305, at *7 (S.D. Fla. Oct. 7, 2013) (quoting *Posner*, 178 F.3d at 1223–24) and "whether the underlying documents are subject to choice of forum or law clauses providing for jurisdiction in a foreign court, the strengths of the domestic and foreign interests, and whether the 'central question ... requires a thorough knowledge of [foreign] law,'" *id.* (quoting *Turner Ent. Co.*, 25 F.3d at 1521).

Defendant points to multiple facts which it claims justify a favorable finding on this element. First, an affiliate of Plaintiff brought the Curaçao lawsuit, which means that Plaintiff would be hard-pressed to now argue that the Curaçao court is not competent or

that the proceedings would not be fair. Next, it claims that the Curaçao proceedings are much further along than the instant case and that the Curaçao court is more familiar with the necessary facts concerning the purported breaches. Finally, the parties to the 2015 Loan Agreement included a choice-of-law provision, agreeing to be governed by Curaçaoan law.

Plaintiff's response does not challenge this element. *Romano v. John Hancock Life Ins. Co. (USA)*, No. 19-21147-CIV, 2022 WL 1447733, at *31 (S.D. Fla. May 9, 2022) (failure to respond to an argument concedes the argument's persuasiveness). Therefore, the Undersigned finds that international comity favors abstention.

The next element -- fairness to the litigants -- considers: (1) the order in which the suits were filed . . .; (2) the more convenient forum . . .; and (3) the possibility of prejudice to parties resulting from abstention. *Turner Ent. Co.*, 25 F.3d at 1521–22 (internal citations omitted).

The first consideration is not in dispute, as the Curaçao case was filed approximately seven months before the instant lawsuit. [ECF No. 22-1].

Defendant claims that the convenience of the forums also weighs in its favor because the relevant evidence, "such as VMSC Miami's servers, computers, and hard copy files," is located in Curaçao. Defendant also states that other than one former employee, no witnesses reside in Miami, and most are either in Curaçao or Venezuela.

Although a portion of Plaintiff's argument header -- "[i]t would be unfair to the

litigants" -- implies that it is challenging this element, Plaintiff does not meaningfully address these factors in its argument. Instead, Plaintiff says that "[g]iven that there is no dispute that money was borrowed and not repaid, the Curaçao proceedings have little to no impact on the breach of the Inventory Loan Agreement." [ECF No. 40]. In Plaintiff's view, "[t]he only issue which might be easier to resolve would be the cross default, but this is an issue which in no way impacts the present claim." *Id*.

Plaintiff's counterarguments -- which are only marginally responsive -- are contradicted by the allegations in the Complaint. The initial ground for Defendant's purported default is based exclusively on VMSC Curaçao's purported breach of the 2015 Loan Agreement, which is the subject of the Curaçao action. To claim that this would have "little to no impact" on the instant lawsuit belies any fair reading of the Complaint. Indeed, the Complaint makes clear that Plaintiff demanded satisfaction of all outstanding notes month(s) before any of the notes would have naturally become due. Plaintiff cannot hide from the fact that the facts surrounding the Curaçao action caused Plaintiff's swift request for full satisfaction of all notes, payment of an acceleration fee, and payment of a higher-than-usual interest rate.

On the third element, Plaintiff contends that it "will be prejudiced by a stay, sitting idle and unable to prosecute its claim, suffering harm each day a stay is in effect." Defendant, in contrast, avers that "[m]uch is lost and little is gained by not staying the case." In Defendant's view, litigating this case would be much easier after the Curaçao

court enters a judgment.

Defendant does not anticipate that a stay will be lengthy, citing to a declaration from Ursus van Bemmelen, a general corporate litigation attorney in Curaçao and one of the attorneys in the Curaçao case, who explains that a judgment is expected in Summer 2023. [ECF No. 22-4]. Plaintiff says this is untrue and includes a declaration of Eric de Vries, a Curaçao attorney and one of the attorneys in the Curaçao case, who explains that an initial judgment may not be handed down until the first quarter of 2024. [ECF No. 40-1]. De Vreis' declaration also explains that additional delays might occur which could cause the case to be delayed until the end of 2024 and, if an appeal is taken, for many more years. *Id.*

Despite these competing declarations, the Undersigned finds that there is no prejudice which would not exist in *any* case where a stay is being considered. Plaintiff points to no evidentiary challenge -- such as a witness or other evidence which might become unavailable if the case were delayed -- or financial hardship which it might suffer if its case is not heard in this forum as expeditiously as possible. Certainly, any civil plaintiff seeking damages would prefer to receive the sought-after money sooner rather than later. But, if this were sufficient to establish prejudice, then this factor would *always* militate against a stay.

The final element requires the Undersigned to evaluate whether a stay would be an efficient use of judicial resources by considering: (1) the inconvenience of the federal

forum; (2) avoidance of piecemeal litigation; (3) whether the actions have common parties and issues; and (4) whether the alternative forum will issue a prompt decision." *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1308 (11th Cir. 2008). These factors have already been discussed through the Undersigned's analysis of the other aspects impacting the suitability of a stay, but the Undersigned will address them briefly in the context of this element.

Each factor weighs in favor of granting a stay. Assessing the claims surrounding the 2015 Loan Agreement would require the Court to apply Curaçao law and would involve evidence which is found in Curaçao. Likewise, failing to grant a stay would result in both the Curaçao Court and this Court trying to resolve similar disputes at the same time. Third, as discussed above, the parties and the claims are substantially similar. Finally, a decision is expected (although not guaranteed) by either the summer of 2023 or the first quarter of 2024. Plaintiff has not directed the Court to any authority which would support a finding that this timeline does not qualify as prompt.

Therefore, because the cases are parallel and all three factors favor abstention, the Undersigned **respectfully recommends** that the District Court **grant** Defendant's request to stay this proceeding pending the outcome of the Curaçao action. In order to diminish the likelihood of prejudice that might occur with an indefinite delay, Plaintiff should be permitted to seek to reopen the case on April 1, 2024 if the Curaçao Court has not issued a judgment. Further, Plaintiff should be required to file a status report advising the Court

of the status of the Curaçao proceedings on January 8, 2024. If the Curaçao Court issues a judgment before April 1, 2024, then Plaintiff shall file a notice within one week of the judgment being issued, advising the Court of the development.

### b. Motion to Dismiss

As an alternative to its stay request, Defendant seeks dismissal of the Complaint on four separate grounds: (1) the Complaint fails to sufficiently allege a breach of contract; (2) Plaintiff failed to comply with the contract's notice requirement; (3) the contract's interest rate is usurious; and (4) Plaintiff failed to pay a Florida Stamp Tax for each promissory note. [ECF No. 22]. The Undersigned will address these arguments in an abundance of caution, in the event that Judge Scola does not adopt and approve the recommendation about staying the case under international abstention principles.

#### i. Adequacy of Breach of Contract Claim

"In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014) (collecting cases). Defendant says that the Complaint falls short of this requirement because it "fails to identify the specific provision(s) [of the contract] breached[.]" [ECF No. 22].

In Plaintiff's view, the Complaint is sufficient because the contracts and notes are attached, the Complaint alleges when the notes were due, and the Complaint concludes

by alleging "<u>without ambiguity</u>" that "[t]he Defendant, VMSC Miami, has materially breached its contractual obligations by, among other things, failing to make the required repayments of principal and interest due and owing under the aforementioned Inventory Loan Agreement and Notes. [ECF No. 40 (citing [ECF No. 1]) (emphasis added)].

Plaintiff argues that the cases Defendant cites as support are factually distinguishable. However, the distinguishing facts have no impact on the unambiguous and consistent holdings that a breach-of-contract plaintiff must plead the specific provision which was purportedly breached. Moreover, despite Plaintiff's assertion that its breach of contract claim is unambiguous, the language in the paragraph it cites directly contradicts this point. In paragraph 47 of the Complaint, Plaintiff accuses Defendant of materially breaching its contractual obligations by, *among other things*, failing to make required payments.

This leaves the Court and Defendant guessing as to which specific provisions of the contract Plaintiff believes were breached. The inherent ambiguity in Plaintiff's chosen language, combined with the failure to identify specific contract provisions which were breached, justify granting Defendant's request to dismiss the Complaint. *Cruz v. Underwriters at Lloyd's London*, No. 8:14–CV–1539–T–33TBM, 2014 WL 3809179, at *2 (M.D. Fla. Aug. 1, 2014) ("It is appropriate to dismiss a breach of contract claim if it fails to state which provision of the contract was breached.")

Therefore, the Undersigned **respectfully recommends** that the District Court

**grant** Defendant's motion and dismiss the Complaint (albeit with*out* prejudice).

### ii. Sufficiency of Notice

The Complaint alleges the following concerning notice:

39. On or around December 16, 2017 VMSC Curaçao defaulted on its 2015 Loan Agreement with Cat Crédito by virtue of its failure to make all required payments when due. As a result, [ ] Plaintiff or affiliates formally declared an event of default not only as to the 2015 Loan Agreement, but also as to the Inventory Loan Agreement, on the basis that the VMSC Curaçao default constituted material impairment of the prospect that VMSC Miami could or would, be financially capable to repay the Inventory Loan Agreement. A copy of the December 15, 2017, default letter is attached hereto as Exhibit H.

40. On or around December 28, 2017 – the day after the 10-day "cure" period provided to VMSC Curaçao to make payment of the outstanding installments under the 2015 Loan Agreement–[ ] Plaintiff exercised its right to accelerate repayment of outstanding amounts due and owing under the Inventory Loan Agreement and related Notes. CFSC notified [ ] Defendant of the "event of default" under the Inventory Loan Agreement, and demanded repayment of all outstanding principal, interest and other amounts then due under the Inventory Loan Agreement. A copy of the December 28, 2017, default letter is attached hereto as Exhibit I.

***

42. Despite written notice as to an event of default and [ ] Plaintiff's demand for repayment, CFSC has received no repayment of any kind under the terms of the Inventory Loan Agreement and related Notes.

[ECF No. 1].

Exhibit I, however, is not a default notice which was sent to Defendant. Rather, it

is a December 28, 2017 default letter sent to VMSC *Curaçao,* advising of a purported

breach of a guarantee agreement. [ECF No. 1-11].

"[I]f the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, [then] the exhibit controls. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). This principle of law typically comes into play where, as here, "a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Id.*

Defendant says that notice *is* required by the contract and, because Plaintiff has failed to establish in the Complaint that it complied with the notice provision, dismissal is warranted. Plaintiff raises two counter arguments. First, Plaintiff attached the "correct" notice to its opposition response as an exhibit [ECF No. 40-2] and says that Defendant "must know" that a notice of default was sent. Second, Plaintiff claims that the contract does not require notice, so there is no ground for dismissal.

Plaintiff's first counter argument can be easily dismissed. The Eleventh Circuit has repeatedly held "that plaintiffs cannot amend their complaint through a response to a motion to dismiss. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)). In assessing whether a motion to dismiss is well taken, a court cannot "look beyond the [ ] [c]omplaint to [the] [p]laintiff's factual assertions in his opposition brief and attachments." *Conyers v. United States Fish & Wildlife Serv.*, No. 13-20358-CIV, 2013 WL 12064522, at *4 (S.D. Fla. Sept. 26, 2013). Thus, Plaintiff's decision to attach the correct notice to its response -- instead of moving for leave to amend its complaint -- cannot correct its error in attaching the

incorrect notice to the Complaint.

In support of its second argument, Plaintiff highlights the following provisions

from the Inventory Loan Agreement:

> **7.02  <u>Rights and Remedies Upon Event of Default.</u>** Upon the occurrence of an Event of Default or at any time thereafter until such Event of Default is cured to the satisfaction of Lender, Lender may exercise any or all of the following rights and remedies:
>
> **(a) Lender may**, by notice to Borrower, declare the entire unpaid principal amount of the Loans, all interest accrued and unpaid thereon, and all other amounts payable under this Agreement to be forthwith due and payable, whereupon the Loans, all such accrued interest and all such amounts shall become and be forthwith due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Borrower;
>
> (b) **Lender may** proceed to protect and enforce this Agreement and the other Loan Documents by suit or suits or proceedings in equity, at law or in bankruptcy, and whether for the specific performance of any covenant or agreement herein contained or in execution or aid of any power herein granted or for the recovery of judgment for the Indebtedness hereby owed, or for the enforcement of any other proper legal or equitable remedy available under applicable law;
>
> (c) **Lender may** exercise any other rights and remedies available to it by law or agreement; and
>
> (d) Lender's rights and remedies shall be cumulative and nonexclusive, to the extent permitted by applicable law.

[ECF No. 40 (citing [ECF No. 1-3 (emphasis in Response)])].

Plaintiff says that subsections (b), (c), and (d) permit it to move forward with a

default without providing notice. [ECF No. 40]. Plaintiff also says that the individual

notes provide that VMSC Miami "irrevocably waives . . . notice of nonpayment . . . and

all other conditions precedent in connection with the . . . enforcement of this Note." *Id.* (quoting [ECF Nos. 1-4–1-9]). Thus, Plaintiff contends that it does not matter whether the correct notice was attached to the Complaint because notice is not a prerequisite.

However, as Defendant explains in its reply, subsection (a) -- which requires notice -- is the only provision which permits acceleration and the associated consequences (i.e., the late payment fee, the higher interest rate, and the acceleration penalty). Further, Defendant notes that Plaintiff's recitation of the note provision leaves out the following relevant language about the notice waiver: "except for notices expressly provided for in the Loan Agreement."

The Complaint makes it clear that Plaintiff is seeking damages associated with acceleration. Under a plain reading of the contract, these acceleration-related damages are available only if Plaintiff provides the required notice. When a plaintiff has failed to establish that it complied with a required notice provision, dismissal is appropriate. *BMO Harris Bank Nat. Ass'n v. Muskogee Indus. Park, LLC*, No. 6:11-CV-363-ORL-31, 2011 WL 4356164, at *4 (M.D. Fla. Sept. 19, 2011) (dismissing breach of contract claim when counter-plaintiff failed to establish that it provided a notice of default as required by the loan agreement).

For these reasons, the Undersigned **respectfully recommends** that the District Court **grant** Defendant's motion and dismiss the Complaint without prejudice based on Plaintiff's failure to allege that it complied with the notice provision which is a

prerequisite for the damages it seeks.

### iii.  Usurious Interest

Defendant contends that the contract is invalid because it seeks an interest rate which is greater than the percentage permitted by Tennessee law. Plaintiff notes in its response that the contract has a provision which lowers the interest rate to the maximum amount allowed by state law if the specified, higher interest rate is determined to be unlawful. Nonetheless, Defendant says that because the Complaint affirmatively seeks the higher interest rate, dismissal is warranted. Defendant provides no authority which would justify either invalidating the contract or dismissing the lawsuit on this ground.

Determining which interest rate is applicable is an argument best left for summary judgment. Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Defendant's motion to dismiss on this ground.

### iv.  Stamp Tax

Defendant argues that Plaintiff is required to "pay a documentary state tax for each of the promissory notes [Plaintiff] claims is in default and affix the documentary stamps on the notes." [ECF No. 22 (citing Fla. Stat. §§ 201.01, 201.08)]. Defendant says that because there is no stamp affixed to the notes Plaintiff included as exhibits and Plaintiff has not alleged that it paid the stamp tax, the Complaint must be dismissed. Citing the same Florida statutes, Plaintiff argues that there is no requirement that the documentary stamp tax be paid on the notes before enforcement.

Relevant to the instant dispute, Section 201.08, Florida Statutes provides:

(1)(a) On promissory notes, nonnegotiable notes, written obligations to pay money, or assignments of salaries, wages, or other compensation made, executed, delivered, sold, transferred, or assigned in the state, and for each renewal of the same, the tax shall be 35 cents on each $100 or fraction thereof of the indebtedness or obligation evidenced thereby. . . .

(b) On mortgages, trust deeds, security agreements, or other evidences of indebtedness filed or recorded in this state, and for each renewal of the same, the tax shall be 35 cents on each $100 or fraction thereof of the indebtedness or obligation evidenced thereby. . . . Failure to pay the tax shall not affect the lien for any such future advance given by s. 697.04, but any person who fails or refuses to pay such tax due by him or her is guilty of a misdemeanor of the first degree. The mortgage, trust deed, or other instrument shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid.

Fla. Stat. § 201.08(1)(a)-(b).

Florida's appellate courts are split on whether Section 201.08(1)(b)'s enforcement provision applies to only the categories included in subsection (1)(b) or whether it also applies to those categories included in subsection (1)(a).

In *Somma v. Metra Elecs. Corp.*, the Fifth District Court of Appeal, interpreting Section 201.08, held that

promissory notes for which documentary taxes have not been paid are, as a matter of law, unenforceable by any Florida court. In an action to enforce such a note, once the court discovers that the documentary taxes have not been paid, the court must dismiss the action without prejudice, or upon proper motion abate the action for a time sufficient to enable the plaintiff to purchase documentary stamps and affix them to the note.

727 So. 2d 302, 305 (Fla. 5th DCA 1999). *Somma's* holding was premised on the "obvious

purpose" of Section 201.08, which the Court determined is "to ensure payment of statutory mandated taxes." *Id.* at 304.

In *Nikooie v. JPMorgan Chase Bank, N.A.*, 183 So. 3d 424, 430 (Fla. 3d DCA 2014), the Third District Court of Appeal adopted the reasoning of *Somma* in a 2-1 decision, holding that "[i]n this district, a note or mortgage may not be enforced until the tax has been paid, but the court may permit the lender to pay the taxes belatedly." *Nikooie* involved mortgages and promissory notes and the majority opinion spent little time discussing the reasoning behind its determination that the enforcement provision in Section 201.08(1)(b) also applies to the instruments in (1)(a).

In contrast, the Fourth District Court of Appeal has reached a different result. In *Glenn Wright Homes (Delray) LLC v. Lowy*, the court examined the structure of the statute and noted that the enforcement provision was contained exclusively in subsection (1)(b) and only prohibits "enforceability of a mortgage or instrument where an advance has been made after recording of the original mortgage, and no tax has been paid on the amount of the advance." 18 So. 3d 693, 696 (Fla. 4th DCA 2009). *Glenn Wright Homes (Delray) LLC* rejected the premise that the enforceability provision is meant to further the State's interest by discussing the remedy available to the State if the requisite taxes have not been paid:

> The state has a substantial interest in ensuring collection of taxes owed. That is why it requires evidence of the payment of the tax prior to recordation of any taxable instrument. The state has elected to enforce its taxes on unsecured promissory notes, however, through the use of its criminal laws

and substantial penalties. *See, e.g.*, § 201.17, Fla. Stat.

*Id.*

Defendant argues that the Undersigned should follow the instruction from Florida's Third and Fifth District Courts of Appeal. Plaintiff contends that the Undersigned should follow the rationale offered by the Fourth District Court of Appeal. As support, Defendant notes that other district courts in the Eleventh Circuit have adopted the majority view. [ECF No. 42 (citing *Ben Fu Li v. Tan*, No. 17-CV-60363, 2017 WL 2464680, at *2 (S.D. Fla. June 7, 2017) ("This Court adopts the majority rule that a promissory note is not enforceable unless documentary taxes have been paid.")].

The Eleventh Circuit, in two unpublished decisions, has also reached conflicting results. *Compare Wane v. Loan Corp.*, 552 F. App'x 908, 915 (11th Cir. 2014) ("Florida courts have held that a promissory note secured by a mortgage cannot be enforced where taxes have not been paid on future advances.") *with Grant v. Pottinger-Gibson*, 725 F. App'x 772, 776-77 (11th Cir. 2018) ("[Plaintiff's] failure to attach tax stamps to the [n]ote did not render it unenforceable under Florida law." (citing *Glenn Wright Homes*, 18 So. 3d at 696)).

As explained by the Eleventh Circuit, a district court sitting in diversity must apply the laws of the state under the following guidelines:

> Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law. Concomitantly, the Florida Supreme Court has held that "[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court. Thus, in the absence of interdistrict conflict, district court

decisions bind all Florida trial courts."

*Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 775 (11th Cir. 2000) (quoting *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992)).

However, in situations such as this, "[w]hen a federal district court must resolve a Florida law issue not yet addressed by the Florida Supreme Court, but 'Florida's District Courts of Appeal are in disagreement concerning the issue at hand, and no overwhelming authority can be discerned among the few Florida District Court decisions on point,' the federal court 'must **predict** how the Florida Supreme Court would resolve the disagreement.'" *Reiner Angulo v. Workhorse Group Inc.*, No. 22-22489-CIV, 2023 WL 2667011, at *3 (S.D. Fla. Feb. 22, 2023) (emphasis added) (quoting *Glass v. Captain Katanna's, Inc.*, 950 F. Supp. 2d 1235, 1242 (M.D. Fla. 2013)).

The Florida Supreme Court consistently uses two principles of law which are relevant to this analysis:

First, the beginning of any statutory analysis requires the court to examine the plain meaning of the statute. *See, e.g., Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022) ("The plain meaning of the statute is always the starting point in statutory interpretation." (internal quotations omitted)). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

Second, the Florida Supreme Court applies "the principle of *expressio unius, est exclusion* [sic] *alterius*, meaning 'the mention of one thing implies the exclusion of another[.]'" *Headley v. City of Miami*, 215 So. 3d 1, 9 (Fla. 2017) (quoting *Sun Coast Int'l, Inc. v. Dep't of Bus. Reg.*, 596 So. 2d 1118, 1121 (Fla. 1st DCA 1992). In other words, "[w]here the Legislature enumerates items to the exclusion of others, the canon of construction *expressio unius est exclusio alterius* encourages the interpretation that the Legislature *purposefully* excluded items not mentioned." *State v. Miller*, 227 So. 3d 562, 564 (Fla. 2017) (holding that a person who never obtained a driver's license could not be charged under the habitual traffic offender statute because it applied to only those drivers who had licenses which had been revoked because other relevant statutes included "individuals who drive without ever having obtained a license" and the habitual traffic offender statute did not include such language).

The Second District Court of appeal applied this principle in a circumstance analogous to the instant case:

> The legislature acknowledged this distinction by using contrasting language defining parcel owners in subsections (2)(a) and (b) of section 720.3085. Subsection 2(a), which addresses the obligation for assessments accruing after title has been acquired, applies to a parcel owner "regardless of how his or her title to property has been acquired." However, this language is omitted from subsection (2)(b), which addresses the obligation for assessments accruing before a new parcel owner acquires property by transfer of title. This omission calls for the application of the rule of statutory construction that by mentioning one thing the legislature intended to exclude the other, or "expressio unius est exclusio alterius." *See Thayer v. State*, 335 So. 2d 815, 817 (Fla. 1976). That is, by failing to include the phrase "regardless of how his or her title to property is acquired" in

subsection (2)(b), the legislature intended to exclude it. Thus, subsection (2)(b) should not be construed as applying to a parcel owner "regardless of how his or her title to property is acquired," but to a parcel owner who has acquired title only by certain designated means; i.e., transfer. And acquisition of title by tax deed does not represent a transfer of title. *See* [*Blume v. Giles*, 143 Fla. 615, 617, 197 So. 344, 345 (1940)].

*Cricket Props., LLC v. Nassau Pointe at Heritage Isles Homeowners Ass'n, Inc.*, 124 So. 3d 302, 306–07 (Fla. 2d DCA 2013).

The opening language of Sections 201.08(1)(a) and (1)(b) make clear that the subsections are meant to address two *different* categories of instruments. Even though both subsections apply the same rate of taxation (i.e., "35 cents on each $100 or fraction thereof"), subsection (1)(b)'s first sentence includes language characterizing the types of instruments to which the section is meant to apply as "evidences of indebtedness *filed or recorded* in this state." Fla. Stat. § 201.08(1)(b) (emphasis added). Section 201.08(1)(b) then goes on to list additional requirements applicable to only instruments which must be recorded. *Id.* ("When there is both a mortgage, trust deed, or security agreement and a note, certificate of indebtedness, or obligation, the tax shall be paid on the mortgage, trust deed, or security agreement **at the time of recordation**.") (emphasis supplied).

The enforcement restriction which Defendant argues should apply to these notes is not included in the subsection concerning "promissory notes, nonnegotiable notes, written obligations to pay money, or assignments of salaries, wages, or other compensation made, executed, delivered, sold, transferred, or assigned in the state." Instead, it is included in the section which refers specifically and generally to instruments

which must be filed or recorded in the state.

The cases upon which Defendant relies in support of its argument offer little statutory construction analysis. Rather, those courts offer theories about the purpose behind why the legislature might have intended for the tax to be paid before any enforcement. In contrast, *Glenn Wright Homes (Delray) LLC* engages in the type of exacting analysis that the Florida Supreme Court uses when confronted with issues of statutory interpretation.

In the Undersigned's view, if the Florida Supreme Court were confronted with this issue, then it would follow the rationale of *Glenn Wright Homes (Delray) LLC* and conclude that a plaintiff bringing a breach of contract action based on a promissory note need not establish that it paid the requisite tax before seeking to enforce the note. Therefore, the Undersigned **respectfully recommends** that the District Court **deny** Defendant's motion to dismiss based on Plaintiff's failure to establish that it paid the state documentary tax.

### III.     Conclusion

The Undersigned **respectfully recommends** that the District Court **grant** Defendant's request to stay this proceeding pending the outcome of the Curaçao action. Plaintiff should be permitted to seek to reopen the case on April 1, 2024, if the Curaçao Court has not issued a judgment. Further, Plaintiff should be required to file a status report advising the Court of the status of the Curaçao proceedings on January 8, 2024. If

the Curaçao Court issues a judgment before April 1, 2024, then Plaintiff should be required to file a notice within one week of the judgment being issued, advising the Court of the development.

Further, if Judge Scola were to determine that it is appropriate to now assess the merits of the substantive motion to dismiss (instead of waiting for a stay to be lifted), then the Undersigned **respectfully recommends** that the District Court **grant** (without prejudice) Defendant's motion to dismiss and dismiss the Complaint without prejudice for failing to properly allege a breach of contract and failing to establish that Plaintiff complied with the notice provision. The Undersigned **respectfully recommends** that the District Court **deny** Defendant's motion to dismiss in all other respects.

**IV.    Objections**

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d

790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March

31, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All counsel of record

32